THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA
Chief Assistant United States Attorney
DOUGLAS A. AXEL (Cal. Bar #173814)
Chief, Major Frauds Section
RICHARD E. ROBINSON (Cal. Bar #090840)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0713
    Facsimile: (213) 894-6269
    E-mail: Richard.Robinson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. CR 06-0776(A)-JFW |
|---|---|
| Plaintiff, | ) |
| v. | ) GOVERNMENT'S SENTENCING MEMORANDUM |
| STEVEN G. COOPERMAN, | ) Sentencing Date: November 3, 2008 |
| Defendant. | ) Time: 9:00 a.m. |
| | ) Court: Hon. John F. Walter |

    Plaintiff United States, by and through its counsel of record, Assistant United States Attorney Richard E. Robinson, hereby submits its Sentencing Memorandum regarding the Court's sentencing of defendant Steven G. Cooperman.

October 28, 2008

THOMAS P. O'BRIEN
United States Attorney
GEORGE S. CARDONA
Chief Assistant United States Attorney

/s/
RICHARD E. ROBINSON
Assistant United States Attorney
Counsel for Plaintiff
United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Steven G. Cooperman ("Cooperman") faces sentencing by the Court following his guilty plea on July 10, 2007 to a one count first superseding information charging him with conspiracy, in violation of 18 U.S.C. § 371. Cooperman's guilty plea, pursuant to his January 30, 2007 plea agreement with the government ("Plea Agreement"), resulted from his participation in a conspiracy to obstruct justice (18 U.S.C. § 1503) and to make false declarations to federal courts (18 U.S.C. § 1623(a)) in class action cases filed throughout the United States. See Dkt # 21, 22, 41. During the course of the conspiracy, Cooperman was paid millions of dollars in kickbacks by the Milberg Weiss law firm for serving, and providing his relatives and associates to serve, as named plaintiffs in class actions brought by Milberg Weiss, which Cooperman concealed from the courts presiding over those class actions.

The Probation Officer has determined that Cooperman's total offense level is 14, his criminal history category is II, and his advisory Sentencing Guideline range is 18 to 24 months. See Presentence Investigative Report disclosed September 12, 2008 ("PSR"). Cooperman and the government agree with the Probation Officer's guideline determinations.

The government recommends that Cooperman be sentenced to 9 months in prison, a three year term of supervised release, a fine of $40,000, and a special assessment of $100.

## II. ADVISORY SENTENCING GUIDELINES

The parties and the Probation Officer have no disputes concerning the applicable advisory Sentencing Guidelines calculations, which are as follows:

### A. Adjusted Offense Level

The base offense level for defendant's offense is 12. U.S.S.G. § 2J1.3. A three-level increase applies because Cooperman's offense conduct resulted in

2

substantial interference with the administration of justice. U.S.S.G. § 2J1.2(b)(2). A two-level increase applies because Cooperman's conduct constituted abuse of a position of trust in a manner that significantly facilitated the commission or concealment of the offense. U.S.S.G. § 3B1.3. This results in an adjusted offense level of 17.[1]  See PSR ¶¶ 31-40; Plea Agreement ¶ 14.

### B. Total Offense Level

The adjusted offense level of 17 is reduced two levels because Cooperman has demonstrated acceptance of responsibility for his offense; and reduced by one level because Cooperman timely notified the government of his intention to enter a plea of guilty. U.S.S.G. §§ 3E1.1(a), (b)(2); Plea Agreement ¶¶ 14, 18(c); PSR ¶¶ 41-42.  This results in a total offense level of 14.

### C. Advisory Guidelines Range

Cooperman has three criminal history points based on his prior conviction in United States v. Steven G. Cooperman, No. CR 98-1184-ER (hereinafter "CR 98-1184-ER"), and therefore is in criminal history category II. PSR ¶¶ 46-53. Assuming a total offense level of 14, Cooperman's advisory guideline range is 18 to 24 months imprisonment. PSR ¶ 100.

### D. Fine

The advisory guideline fine range for Cooperman, based on a total offense level of 14, is $4,000 to $40,000. U.S.S.G. § 5E1.2; PSR ¶ 111.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

### A. The Government's Recommendation

The government recommends that Cooperman be sentenced to a term of 9 months imprisonment, a three year term of supervised release, a fine of $250,000, and a special assessment of $100. The government submits that the recommended

---

[1] The parties and the Probation Officer agree that the applicable Sentencing Guidelines for defendant's offense conduct are set forth in the Guidelines manual in effect November 1, 1998, as use of the current version of the manual would raise ex post facto issues. PSR ¶ 29.

sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2).

B. <u>Nature and Circumstances of the Offense</u>

From 1988 and continuing until at least 1999, Cooperman and certain of his relatives and associates served as named plaintiffs in approximately 70 class actions and shareholder derivative actions brought by the Milberg Weiss law firm throughout the United States. Beginning in 1988 and continuing through approximately 1997, Cooperman had an arrangement with Milberg Weiss and its senior partners Melvyn Weiss, William Lerach, and David Bershad, by which Milberg Weiss would pay Cooperman a substantial amount of the attorneys' fees that Milberg Weiss obtained in the lawsuits in which Cooperman or one of his associates or relatives served as a name plaintiff, as well as other lawsuits in which Cooperman provided information for use by Milberg Weiss.

Cooperman solicited Cooperman Plaintiff 1 and Cooperman Plaintiff 2 to participate in the conspiracy, and shared with them payments he received in connection with lawsuits in which these individuals served as named plaintiffs. Pursuant to this arrangement, Milberg Weiss made a total of more than $6.1 million in payments for the benefit of Cooperman, Cooperman Plaintiff 1, and Cooperman Plaintiff 2. Cooperman's personal share of the kickback payments was approximately $5.8 million. Cooperman received the kickbacks in several ways: (a) cash delivered to Cooperman by Lerach; (b) a phony art option payment by Weiss and phony "retainer" payments by Milberg Weiss to Cooperman's then brother-in-law; and (c) Milberg Weiss checks issued by Bershad to Cooperman's selected intermediaries, James Tierney, Richard Purtich or one of Purtich's associated law firms, disguised as fees that Milberg Weiss owed to these lawyers.

Cooperman understood that his payment arrangement with Milberg Weiss, and they payments themselves, had to be kept secret from the court presiding over the lawsuits in which Cooperman and his relatives and associates served as named

4

plaintiffs.  Cooperman understood that Weiss, Lerach, and Bershad also intended to keep Cooperman's payment arrangement with Milberg Weiss secret. Cooperman understood that, if a court learned about his payment arrangement with Milberg Weiss, it could affect the court's decisions (a) to certify the case as a class action and/or shareholder derivative action; (b) to approve Cooperman as a representative plaintiff; (c) to approve Milberg Weiss as class counsel; and (d) concerning the award of attorneys' fees to Milberg Weiss.

As a result, in furtherance of the conspiracy Cooperman repeatedly made false and misleading statements to conceal the kickback arrangement in (a) his answers to interrogatories in <u>Columbia Savings & Loan</u> and <u>Fairfield Communities</u>; (b) his deposition testimony in <u>Fairfield Communities</u>, <u>Valley National</u>, and <u>Jan Bell Marketing</u> ; (c) his affidavit in <u>One Bancorp</u>; and (d) his certification <u>Individual, Inc.</u>  See PSR ¶¶ 9-24.

C.   The History and Characteristics of the Defendant

In 1999, in the matter <u>United States v. Cooperman</u>, CR 98-1184-ER, Cooperman was convicted following a jury trial of conspiracy (18 U.S.C. § 371), wire fraud (18 U.S.C. § 1343), interstate transportation of stolen property (2314), unlawful monetary transactions (18 U.S.C. § 1957), false statements to a financial institution (18 U.S.C. § 1014), and subscribing to a false tax return (26 U.S.C. § 7206).  The convictions arose from a fraud scheme in which Cooperman (a) falsely reported that original Monet and Picasso oil paintings had been stolen from his Brentwood home in 1992; (b) made a fraudulent theft loss claim to the insurers of the paintings; (c) falsely reported the theft to a bank that had lent Cooperman $4 million secured by the paintings; (d) collected $17.5 million in 1993 from the victim insurers in settlement of his bogus theft claim; and (e) failed to report on

his 1993 tax return $5 million of the insurance proceeds he had received.[2]

Soon after his trial, Cooperman brought to the government's attention the Milberg Weiss paid plaintiff scheme, and offered his assistance in investigating such conduct. In a Case Disposition Agreement between Cooperman and the government dated August 22, 2000, Cooperman formally agreed to cooperate with the government's investigation of the Milberg Weiss kickback scheme and the government agreed not to prosecute Cooperman for violations of federal law relating to his conduct in that scheme. Consistent with the Case Disposition Agreement, the government also conferred on Cooperman substantial benefits in connection with his sentencing on the art fraud case, in which he faced a guideline range of the 78 to 97 months, based on a total offense level of 28 and criminal history category I. First, the government made a six-level Section 5K1.1 downward departure motion based on Cooperman's substantial assistance and also stipulated to a one-level downward departure based on Cooperman's extraordinary charitable contributions. After adopting the government's recommendation, the Hon. Edward Rafeedie reduced Cooperman's offense level from 28 to 21 and sentenced Cooperman to 37 months imprisonment.

Following his sentencing, Cooperman continued to cooperate while in custody. Such cooperation was particularly onerous on Cooperman, because he had to transfer from a low-security Bureau of Prisons facility in Massachusetts to the Metropolitan Detention Center in Los Angeles. During a significant portion of the time Cooperman was housed in Los Angeles, the Marshal housed him at Kern County Jail. Meeting with government agents to review documents and provide information required long and difficult days, much of which were spent in transit to and from lock-up.

---

[2] To facilitate his commission of this offense, Cooperman used Milberg Weiss kickback payments in two ways: (1) to pay Tierney for removing and hiding the art work from Cooperman's home (so that Cooperman could make his fraudulent insurance claim); and (2) to pay Purtich for suing the insurance companies for the purported loss.

6

To credit his continuing cooperation, the government made a Rule 35 motion to further reduce his sentence. As a result of the government's motion, Judge Rafeedie further reduced Cooperman's sentence the equivalent of four levels, from 37 to 24 months imprisonment. (The government had asked for the equivalent of a five-level reduction.) Cooperman actually served about 21 months in custody and was released in July 2003. In total, Cooperman's cooperation from 1999 through 2002 resulted in his receiving Section 5K1.1 and Rule 35 sentencing reductions equivalent to 10 Guidelines offense levels, or about 50 months.[3]

In 2006, the government learned that Cooperman had engaged in fraud and forgery in connection with several disability insurance policies while he was in custody in Los Angeles cooperating with the government. The government investigated the fraud, determining that Cooperman forged his Connecticut cardiologist's signature on several insurance forms attesting to Cooperman's continuing disability, and made false statements on those forms designed to conceal the fact that Cooperman was in jail. The forms were submitted in order to continue to receive benefits under pre-existing disability insurance policies Cooperman had with several insurance companies, including Unum, Jefferson Pilot, and Nationwide Mutual. There was evidence that the forms were transmitted to and from Cooperman through his criminal defense attorneys and, in sealed envelopes, through the government agents who were meeting with Cooperman to debrief him on the Milberg Weiss scheme. Although the fraud was material, in that the insurance companies would have wanted to know that Cooperman was in jail and not being seen by his treating cardiologist, ultimately the fraud caused no losses to the insurance companies. After they learned of the fraud, none of Cooperman's insurance companies sought to cancel Cooperman's

---

[3] After December 2002, Cooperman had five phone calls and one meeting with agents during which he clarified and elaborated on certain aspects of his prior statements concerning various Milberg Weiss scheme participants. These brief communications did not provide substantial assistance as to any new matters.

disability policies or to avoid future payments; none have asserted that Cooperman was not in fact "disabled" during the time he was in prison.

Despite the absence of monetary loss to the insurance companies, the government viewed Cooperman's fraud and forgery to be a material breach of the Case Disposition Agreement. The government knew when entering into the Case Disposition Agreement that Cooperman's prior conduct created substantial credibility issues should he testify at trial. Thus the government went to extraordinary lengths to corroborate Cooperman's proffered testimony, and was prepared to do so at trial. However, Cooperman's commission of insurance fraud and forgery during the same time he was cooperating with the government – using the unknowing assistance of government agents to transmit some of the forged forms to or from Cooperman – rendered his testimony virtually unusable.

When he was eventually confronted, Cooperman admitted that he had forged the disability insurance forms while in prison and made false statements on the forms designed to conceal the fact he was in prison. Ultimately, Cooperman also agreed that his actions constituted a material breach of the Case Disposition Agreement. Such breach (a) relieved the government of its commitment not to prosecute Cooperman with regard to his conduct in the Milberg Weiss kickback scheme and (b) allowed the government to use against Cooperman his admissions concerning the existence of the scheme and his involvement in it. After he was indicted, Cooperman decided to plead guilty to the offense for which he now faces sentencing. Cooperman's plea agreement did not contain any ongoing cooperation provisions.

C.  The Recommended Sentence Is Reasonable And Appropriate

A district court at sentencing is to "'impose a sentence sufficient, but not greater than necessary,' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational

8

training, medical care, or other correctional treatment." <u>United States v. Carty</u>, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); 18 U.S.C. § 3553(a) and (a)(2).

The government believes that a 9 month prison sentence, followed by three year of supervised release, and the imposition of a $40,000 fine, would appropriately reflect the seriousness of the sentence, promote respect for law, and provide just punishment. The government believes that the sentence is necessary to satisfy the purposes of sentencing for the following reasons:

First, the nature and circumstances of Cooperman's criminal conduct are no doubt serious. His role in the kickback scheme spanned many years, implicated numerous cases litigated in federal and state courts, and was very profitable for Cooperman. Cooperman's offense conduct was the most culpable of the paid plaintiffs convicted by the government. The number of lawsuits in which Cooperman and his relatives and associates served as named plaintiffs was slightly more (70) than the number of lawsuits involving Seymour Lazar and his relatives (67) and Howard Vogel and his relatives (40) as named plaintiffs. Nonetheless, Cooperman's share of the kickbacks ($5.8 million) substantially exceeded the total amount of kickbacks that Milberg Weiss paid to Seymour Lazar ($2.6 million) and Howard Vogel ($2.5 million). Also, Cooperman, unlike Lazar and Vogel, solicited non-family members (Cooperman Plaintiff 1 and Cooperman Plaintiff 2) to join the conspiracy as paid plaintiffs.

Second, Cooperman's criminal record is more significant than Lazar and Vogel, neither of whom have prior convictions.

Third, and most importantly in the government's view, a significant sentence of Cooperman in necessary in light of the huge sentencing reduction Cooperman received in CR 98-1184-ER predicated on his cooperation, and his subsequent breach of the agreement by which he obtained that reduction. Cooperman's substantial sentence reduction contemplated that Cooperman would continue to be able to provide at trial the credible evidence that he had provided

during his debriefings, and that he would not engage in any new misconduct that would adversely affect his credibility. Cooperman's commission of fraud and forgery offenses at the same time he was cooperating materially deprived the government of the benefit of the bargain it had struck with Cooperman, pursuant to which Cooperman had already received a very substantial sentencing reduction. The need to promote respect for the law requires that an individual who decides to enter into a cooperation agreement with the government, and subsequently breaches the agreement by committing serious new criminal offenses, should have to pay a price for the breach. Cooperman received a sentencing benefit of roughly 50 months in exchange for his cooperation and agreement to continue to cooperate; "giving back" nine of those months is not too severe a penalty for his material breach of that agreement.

On the other hand, a sentence greater than nine months is not necessary to satisfy the Section 3553(a) factors with respect to Cooperman, for several reasons:

First, Cooperman' age of 66, coupled with his poor health condition, weigh against the need for more extended imprisonment. See PSR ¶¶ 70-76, describing Cooperman's physical condition.

Second, more extended imprisonment is not needed to protect the public. Cooperman's participation as a paid plaintiff ended almost a decade ago and there is little risk that he could or would become involved in such a fraudulent scheme again.

Third, more extended imprisonment is not needed to provide Cooperman, at this late point in his life and given his health condition, with educational or vocational training.

Fourth, Cooperman stands convicted of participating in the Milberg Weiss conspiracy based primarily on the information Cooperman himself provided to the government.

///

Fifth, a sentence of greater than nine months would tend to create an unwarranted sentencing disparity as compared with Steven Schulman, whose culpability in the offense substantially exceeded that of Cooperman and whose cooperation with the government, although meaningful, was not timely given.

## IV.  CONCLUSION

For the foregoing reasons, the Court should (a) determine the applicable guideline range to be 18 to 24 months, based on an offense level 14 and criminal history category II; and (b) sentence Cooperman to a term of 9 months imprisonment, followed by a three year term of supervised release, and impose a fine of $40,000 and a special assessment of $100.